**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **KRISTY POWELL,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **Civil Action No.** 26-2138 |
| | § | |
| **CITY OF MAGNOLIA, TEXAS and** | § | |
| **MATTHEW "DOC" DANTZER,** | § | |
| | § | |
| **Defendants** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Kristy Powell ("Plaintiff" or "Ms. Powell") files this Original Complaint against Defendants City of Magnolia, Texas (the "City"), and Matthew "Doc" Dantzer ("Mr. Dantzer" and, collectively with the City, "Defendants"), and respectfully shows as follows:

### I.  PARTIES

1.      Ms. Powell is an individual resident of the State of Texas.

2.      The City is a municipal corporation organized under Texas law, and it may be served through its City Secretary or other authorized agent at 18111 Buddy Riley Blvd., Magnolia, Texas 77354, or wherever they may be found.

3.      Mr. Dantzer is and was at all relevant times the Mayor of the City and therefore the final policymaker for the City's internal operations, including without limitation the City's personnel decisions. He is sued in his individual and official capacities and may be served at 18111 Buddy Riley Blvd., Magnolia, Texas 77354, or wherever he may be found.

### II.  JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because Plaintiff's claims

against Defendants are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

5. Venue is proper under 28 U.S.C. § 1391(b) because Mr. Dantzer resides, and the events giving rise to Plaintiff's claims against Defendants occurred, in Montgomery County, Texas, within the Southern District of Texas. This Court therefore has personal jurisdiction over the City, a Texas municipal corporation located within the Southern District of Texas, as well as Mr. Dantzer.

### III. CONDITIONS PRECEDENT

6. All conditions precedent have been performed or have occurred.

### IV. FACTS

**A. Ms. Powell's Employment with the City**

7. Ms. Powell was a public employee who was first hired by the City in July 2024.

8. In October 2024, Mr. Dantzer promoted Ms. Powell to the role of Human Resources Director ("HR Director").

9. Early on, a pattern soon emerged where Mr. Dantzer exhibited clear favoritism towards male employees while exhibiting discriminatory animus towards female employees.

10. In connection with her role as HR Director, Ms. Powell investigated and terminated the City's Field Supervisor in February 2025 due to credible reports of racial discrimination, harassment, and favoritism. Ms. Powell also investigated the City's Public Works Director in May 2025, who was later terminated as well, due to credible reports of insubordination and incompetency. Both individuals were close male friends of Mr. Dantzer.

11. Soon after, Mr. Dantzer and various individuals with a close personal and/or working relationship with him began retaliating against Ms. Powell, including in the form of ostracization, name-calling, and other harassing behavior.

12. In August 2025, Ms. Powell began to report this behavior to her immediate supervisor: the recently hired City Administrator, Chris Whittaker ("Mr. Whittaker").

13. No changes were made to Ms. Powell's working conditions, however, and the harassing and retaliatory behavior continued to persist. Furthermore, Ms. Powell would be intentionally excluded from meetings and other City business as well as various personnel concerns—a function that was squarely within Ms. Powell's responsibilities as the City's HR Director. Two different City employees also approached Ms. Powell and separately showed her text messages they received from Mr. Dantzer instructing them not to trust Ms. Powell (including in her role as HR Director).

**B. Retaliation for Reporting the October 29 Incident**

14. From October 29 to October 31, 2025, Ms. Powell attended the Texas Municipal League's Annual Conference in Fort Worth, Texas, along with Mr. Dantzer, Mr. Whittaker, and the City Secretary.

15. After dinner on the night of October 29, Mr. Dantzer offered to walk the City Secretary—who was five months pregnant at the time—back to the hotel while the others in attendance continued their night elsewhere, and the City Secretary accepted.

16. The City Secretary later reported to Ms. Powell that Mr. Dantzer began to make inappropriate and sexualized statements to the City Secretary on the walk back, including by commenting on her loose pants (worn due to her pregnancy), and he then twice attempted to pull them down.

17. Fearful of Mr. Dantzer's position of authority over her, the City Secretary later reported to Ms. Powell that she remained calm and attempted to play this off as a joke. As they approached the hotel, however, the City Secretary later reported that Mr. Dantzer suddenly—and

violently—grabbed the City Secretary, pinned her by her throat against a column, and made more inappropriate and sexually-charged statements to her.

18.     The City Secretary later reported to Ms. Powell that she yelled out and managed to push Mr. Dantzer off, after which she attempted to regain her composure and retreated to her hotel room. Mr. Dantzer sent her a text message apologizing shortly thereafter.

19.     The City Secretary reported this incident to Ms. Powell the morning after it occurred, and Ms. Powell then immediately reported the same to Mr. Whittaker.

20.     Ms. Powell and the City Secretary then submitted formal, written reports regarding the October 29 incident containing explicit requests for whistleblower protection on November 4 and 5, respectively. Shortly thereafter, Mr. Whittaker told Ms. Powell that the City would hire third-party investigators to conduct an investigation into the October 29 incident.

21.     Since then, two different City employees (including Mr. Whittaker) informed Ms. Powell that Mr. Dantzer explicitly stated that he was "going after" her and the City Secretary and wanted to terminate their employment.

22.     Ms. Powell also began to experience even more harassing and retaliatory behavior by certain employees who were close with Mr. Dantzer. This additional behavior took the form of manufactured complaints about Ms. Powell's performance, unfounded allegations of nepotism related to Ms. Powell's husband's employment with the City, and continued exclusion from meetings and other City business.

23.     The manufactured performance issues were especially galling, considering Ms. Powell received a favorable yearly review with Mr. Whittaker and, in October 2025, the City Council approved a guaranteed annual salary raise of no less than $19,500 per year.

24. Ms. Powell reported the continuing workplace harassment and retaliation to Mr. Whittaker on November 12. In response, it was made clear that the City's management expected Ms. Powell to "take the high road" by turning a blind eye and continuing to tolerate harassment and disrespect.

25. By November 18, Ms. Powell's working conditions became so intolerable that she felt compelled to resign. That evening, Ms. Powell tendered her written resignation to Mr. Whittaker. She also explicitly stated her intent to continue working until December 31 to assist with (1) transitioning her role and/or hiring a replacement, and (2) the investigation into the October 29 incident.

26. Mr. Whittaker responded by thanking Ms. Powell for her service to the City but, thereafter, began to ignore and ostracize her. Furthermore, other City employees aligned with Mr. Dantzer (such as the Court Administrator) escalated their harassing and retaliatory rhetoric towards Ms. Powell.

27. On the afternoon of November 24, 2025, Mr. Whittaker informed Ms. Powell that her resignation was being accepted, and that her employment was thereby terminated, effective immediately.

28. On February 16, 2026, the undersigned counsel for Ms. Powell submitted a formal grievance and appeal letter to the City Attorney pursuant to Texas Government Code § 554.006. The next morning, outside counsel claiming to represent the City—who the City had also engaged in November 2025 to conduct the third-party investigation—contacted the undersigned attorneys in response, noting that Ms. Powell's letter "*gave me and the City Attorney a chuckle*."

29. Then, after tersely explaining that there is no grievance or appeal procedure available to Ms. Powell, the City's outside counsel claimed that Ms. Powell "chose to resign

instead of participating in an investigation about, among other things her own conduct"—even though "her own conduct" was not the basis for the purported third-party investigation—and that the investigation revealed Ms. Powell was "unprofessional and disruptive."

### C.  Summary

30.    Ms. Powell engaged in protected speech when she verbally reported and then submitted a formal complaint regarding the October 29 incident, in which Mr. Dantzer is alleged to have assaulted and sexually harassed the City Secretary. Ms. Powell had also engaged in protected speech with her earlier complaints of harassing and retaliatory behavior by Mr. Dantzer and other City employees under his control.

31.    Defendants retaliated against and constructively discharged Ms. Powell because of her protected speech.

32.    Mr. Dantzer was acting in the course and scope of his employment as the Mayor for the City when he deprived Ms. Powell of her right to free speech.

33.    At the time of Ms. Powell's retaliatory harassment and constructive discharge, Mr. Dantzer was acting under color of the laws and regulations of the City and the State of Texas.

34.    The City had a policy or custom in place that permitted Mr. Dantzer to violate Ms. Powell's right to free speech. Specifically, Mr. Dantzer and other employees under his direct control or influence (1) fostered a hostile work environment to discourage employees, including Ms. Powell, from reporting any workplace violations or other illegal behavior; and (2) otherwise made working conditions so intolerable so as to compel employees who report workplace violations or other illegal behavior, including Ms. Powell, to resign.

35.    As a further example of the City's policy or custom permitting Mr. Dantzer to violate Ms. Powell's right to free speech, the City Attorney was asked at a City Council meeting on March 10, 2026, about the City's handling of the October 29 incident. Eventually, the City

Attorney publicly admitted that the "third-party" investigation was conducted to protect the City, rather than the City's employees—including, importantly, the City Secretary.

## V.   COUNT 1—42 U.S.C. § 1983:
### FIRST AMENDMENT RETALIATION AGAINST MR. DANTZER IN HIS INDIVIDUAL CAPACITY

36.     Plaintiff incorporates the preceding paragraphs as if set forth herein.

37.     At the time of and leading up to Plaintiff's constructive discharge, she was acting as a private citizen speaking as to a matter of public concern.

38.     Plaintiff's interest in her statements and formal reports of workplace violations and/or other illegal behavior outweighs any interest of the City in promoting the efficient operation and administration of government services.

39.     The adverse employment action taken against Plaintiff would deter a person of ordinary firmness from continuing to engage in the protected speech.

40.     Plaintiff's protected speech was a substantial and motivating factor in Defendants' decision to constructively discharge Plaintiff.

41.     Defendants' decision to constructively discharge Plaintiff violated Plaintiff's clearly established constitutional rights and was not objectively reasonable in light of the circumstances.

42.     Furthermore, Mr. Dantzer acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff's right to free speech protected under the First Amendment.

43.     Plaintiff is entitled to and seeks damages in an amount to be determined at trial, as well as attorneys' fees, costs, and pre- and post-judgment interest, as a result of Mr. Dantzer's illegal actions and Plaintiff's constructive discharge in violation of 42 U.S.C. § 1983.

## VI.  COUNT 2—42 U.S.C. § 1983:
### *MONELL* LIABILITY AGAINST THE CITY

44.     Plaintiff incorporates the preceding paragraphs as if set forth herein.

45.     The City's policy or custom enabled its agents and employees, including Mr. Dantzer, to act with deliberate indifference to Plaintiff's right to free speech.

46.     Furthermore, as the Mayor, Mr. Dantzer was the City's chief executive officer and therefore exercised broad authority over its operations, including without limitation by making employment decisions, managing subordinate officers, overseeing adherence to relevant laws/ordinances, and making recommendations to the City's governing body (the City Council). In other words, Mr. Dantzer is a final policymaker for the City.

47.     Mr. Dantzer deliberately chose to follow a course of action that enabled him and other City employees to (1) act with deliberate indifference to Plaintiff's right to free speech, and (2) retaliate against Plaintiff for her exercise of the same.

48.     Plaintiff's protected speech was a substantial and motivating factor in Defendants' decision to constructively discharge Plaintiff.

49.     Plaintiff is entitled to and seeks damages in an amount to be determined at trial, as well as attorneys' fees, costs, and pre- and post-judgment interest, as a result of the City's illegal actions and Plaintiff's constructive discharge in violation of 42 U.S.C. § 1983.

## VII.  COUNT 3—RETALIATION IN VIOLATION OF
### THE TEXAS WHISTLEBLOWER ACT

50.     Plaintiff incorporates the preceding paragraphs as if set forth herein.

51.     Plaintiff reported a violation of law by Mr. Dantzer, a public employee and the City's chief executive officer, to the City and other appropriate law enforcement authorities.

52.     Plaintiff's report regarding Mr. Dantzer's violation of law was made in good faith.

8

53. Plaintiff's constructive discharge would not have occurred when it did if Plaintiff had not reported the illegal conduct and, thereafter, been subjected to harassment and retaliation.

54. Plaintiff timely initiated the grievance or appeal procedures as required by Texas Government Code § 554.006.

55. Plaintiff is entitled to and seeks damages in an amount to be determined at trial, as well as attorneys' fees, costs, and pre- and post-judgment interest, as a result of the City's illegal actions and Plaintiff's constructive discharge in violation of the Act.

## VIII.  DAMAGES

56. Plaintiffs incorporate the preceding paragraphs as if set forth herein.

57. As a direct and proximate cause of Defendants' actions, Plaintiff suffered the following injuries and damages:

    a. Lost earnings;

    b. Loss of earning capacity;

    c. Damage to reputation in the past and future;

    d. Mental anguish in the past and future; and

    e. Loss of pension or retirement benefits.

## IX.  ATTORNEYS' FEES & COSTS

58. Plaintiff is entitled to an award of attorneys' fees and costs, including without limitation expert fees, under 42 U.S.C. § 1988(b)-(c) and Texas Government Code § 554.003(a).

## X.  DEMAND FOR JURY TRIAL

59. Plaintiff demands a trial by jury in this action.

## XI.  CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests judgment in her favor against all Defendants, jointly and severally, as follows:

a.   Actual and/or compensatory damages;

b.   Punitive damages;

c.   Pre- and post-judgment interest;

d.   Plaintiff's costs of suit and reasonable attorneys' fees; and

e.   Such additional or alternative relief as the Court deems just and proper.

Dated: March 17, 2026                    Respectfully submitted,

**PORTER HEDGES LLP**

By:   */s/ William R. Stukenberg*
        William R. Stukenberg, *Attorney-in-Charge*
        Texas Bar No. 24051397
        SD Federal ID No. 613841
        Emil M. Sadykhov
        Texas Bar No. 24110316
        SD Federal ID No. 3385031
        1000 Main Street, FL 36
        Houston, TX 77002
        wstukenberg@porterhedges.com
        esadykhov@porterhedges.com
        Telephone: (713) 226-6611
        Facsimile: (713) 228-1331

**ATTORNEYS FOR PLAINTIFF
KRISTY POWELL**