United States District Court
Southern District of Texas
**ENTERED**
November 06, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KRISTY POWELL, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-26-2138 |
| CITY OF MAGNOLIA, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Kristy Powell has sued her former employer, the City of Magnolia, Texas, and its former mayor, Matthew Dantzer. (Docket Entry No. 29 at 1). Powell had been the City's Human Resources Director. She alleges that after she investigated City employees, who were Dantzer's friends and allies, for misconduct in February 2025 and May 2025, she was retaliated against and harassed by Dantzer and his friends and allies. Powell alleges that in October 2025, Dantzer assaulted the City Secretary, Christian Gable, who complained to Powell. Both Powell and Gable filed formal reports about the assault. Powell alleges that Dantzer and employees close to him retaliated by harassing her and manufacturing complaints about her job performance, causing her constructive discharge.

Powell sues the City and Dantzer for retaliating against her for her complaints about the harassment and discrimination, in violation of the First Amendment; for discriminating on the basis of her sex, in violation of the Fourteenth Amendment Equal Protection Clause; for unjust enrichment; for violating the Texas Whistleblower Act; and for violating of the Fair Labor Standards Act.

Dantzer and the City have moved to dismiss Powell's claims. (Docket Entry Nos. 34, 37). Based on the pleadings, the motion, the record, and the applicable law, the court grants both motions to dismiss and enters an order of dismissal. The reasons are set out below.

## I. Background

In July 2024, the City of Magnolia hired Powell. (*Id.* ¶ 7). In October 2024, the City's mayor, Matthew Dantzer, promoted Powell to the position of Human Resources Director, which gave her authority to make leadership decisions until June 2025, when the City Administrator role was filled. (*Id.* ¶¶ 8, 9). Powell alleges that early in her employment, Dantzer "exhibited clear favoritism" to male employees and "discriminatory animus" to female employees. She alleges that Dantzer ignored her strategic suggestions and did not take them seriously until the City Engineer, a male, presented her ideas as his own. (*Id.* ¶¶ 10, 11). She alleges that Dantzer instructed her to add $10,000 to the City Engineer's salary for leadership duties that Powell herself had recommended and implemented. (*Id.* ¶ 11). She cites as support for her claim that Dantzer was biased, a statement by Dantzer that on one occasion, he did not hire a female candidate because "women have too much estrogen." (*Id.* ¶ 12).

In February 2025, Powell investigated the City's Field Supervisor after receiving credible reports of racial discrimination, harassment, and favoritism. (*Id.* ¶ 13). In May 2025, she investigated the City's Public Works Director in May 2025, after receiving credible reports of insubordination and incompetency. (*Id.*). Both the Field Supervisor and the Public Works Director were "close male friends" of Dantzer. (*Id.*). Both were terminated from their City employment. (*Id.*). Powell alleges that shortly after these events, Dantzer and his allies in City leadership positions—the Court Administrator, Frances Suarez; the Chief of Magnolia Police, Kyle Montgomery; and the Executive Director of the Economic Development Corporation, Rachel

Steele—began retaliating against her. (*Id.* ¶ 14). Powell alleges that this retaliation included ostracization, name-calling, and "other harassing behavior." (*Id.*).

In August 2025, Powell began reporting the retaliatory behavior to her immediate supervisor, Chris Whittaker, the recently hired City Administrator. (*Id.* ¶ 15). No changes occurred. (*Id.* ¶ 16). Powell alleges that she continued to be excluded from meetings, decisions involving City business, and various personnel concerns that were squarely within her responsibilities as the Human Resources Director. (*Id.*). She alleges that two City employees showed her texts from Dantzer instructing them not to trust her. (*Id.*). Powell further alleges that Dantzer made inappropriate comments towards her and other women, including a comment about Powell's breasts. (*Id.* ¶ 17).

In August 2025, another City employee asked Powell for help in addressing increasingly inappropriate text messages she was receiving from Dantzer. (*Id.*). Although that employee declined to make a formal complaint, Powell advised her on how to minimize her contact with Dantzer. (*Id.*).

In late October 2025, Powell attended the Texas Municipal League's Annual Conference in Fort Worth. (*Id.* ¶ 18). Dantzer, Whittaker, and the City Secretary, Christian Gable, also attended. (*Id.*). On the night of October 29, Dantzer offered to walk Gable back to the hotel. (*Id.* ¶ 19). Gable later told Powell that Dantzer made inappropriate comments to her on the way home, including comments about her loose pants—which she was wearing due to her pregnancy—and twice attempted to pull her pants down. (*Id.* ¶ 20).

Gable initially tried to portray this incident as a joke, which Powell attributed to fear of Dantzer's authority over Gable. (*Id.* ¶ 21). The following morning, however, Gable told Powell that near the hotel, Dantzer had suddenly and violently grabbed her by the throat, pinned her

against a wall, and made more "inappropriately and sexually-charged statements to her." (*Id.*). Gable told Powell that she yelled and managed to push Dantzer off. (*Id.* ⁋ 22). Gable told Powell that Dantzer later sent a text message apologizing for his actions. (*Id.*).

Powell reported what Gable had told her to Whittaker. (*Id.* ⁋ 23). Powell and Gable submitted formal written reports on November 4 and 5, including requests for whistleblower protection. (*Id.* ⁋ 24). Whittaker told Powell that the City would hire a third party to investigate the October 29 incident. (*Id.*). Both Whittaker and another City employee informed Powell that Dantzer had told them that he was "going after" Powell and Gable and wanted them fired because of their complaints. (*Id.* ⁋ 25).

Powell alleges additional harassing and retaliatory behavior against her by employees close to Dantzer, including manufactured performance complaints, unfounded allegations of nepotism concerning her husband, and further exclusion from decisions involving City business. (*Id.* ⁋ 26). She cites an instance in which Steele sent Whittaker a complaint about Powell's performance, suggesting that the City should contract with a third party to perform Powell's duties. (*Id.* ⁋ 27). Powell alleges that she had previously received a favorable review from Whittaker and that the City had approved her annual salary raise. (*Id.* ⁋ 28).

Powell reported the harassment and retaliation to Whittaker on November 12, 2025. (*Id.* ⁋ 29). Powell asserts that "it was made clear that the City's management expected [her] to 'take the high road' by turning a blind eye and continuing to tolerate harassment and disrespect." (*Id.*). On November 18, Powell tendered Whittaker her written resignation, based on "intolerable" working conditions. (*Id.* ⁋ 30). Powell told Whittaker that she intended to continue working until December 31 to assist with the transition and the October 29 incident investigation. (*Id.*). She alleges that Whittaker ostracized her and ignored her while other employees escalated their harassment and

retaliatory rhetoric, including an employee asking Powell "why don't you just f***ing leave now? No one wants you here anyway." (*Id.* ⁋ 31).

On November 24, 2025, Whittaker presented Powell with a termination letter, effective immediately. The letter stated that "the City planned to deduct $2,251.60 from Powell's final paycheck as 'reimbursement owed for the City the cost of tuition and travel expenses related to human resources certification training [Powell] completed on November 7, 2025, for which the City paid.'" (*Id.* ⁋ 32-33). Whittaker "reversed course" on this decision after Powell explained that the certification was required by the City and assured her that she would be paid in full. (*Id.*).

On February 16, 2026, Powell's counsel submitted a formal written grievance and appeal letter under Tex. Gov. Code § 554.006 to the City attorney. (*Id.* ⁋ 34). The City's outside counsel, after noting that Powell's letter "gave [them] and the City Attorney a chuckle[,]" told Powell's counsel that there was no grievance or appeal procedure available. (*Id.* ⁋⁋ 34, 35). The City's outside counsel also said that Powell had "chose[n] to resign instead of participating in an investigation about, among other things her own conduct," and that the City's investigation had revealed that Powell was "unprofessional and disruptive." (*Id.* ⁋ 35). On March 28, 2026, Powell discovered that the City did deduct $2,251.60 from her final paycheck, masked as a withholding from her gross pay, which prevented her from discovering it sooner. (*Id.* ⁋ 37).

Powell alleges that she engaged in protected speech when she reported Gable's October 29, 2025, incident with Dantzer, and when she made her August and November 2025 complaints that Dantzer and other City employees harassed and retaliated against her. (*Id.* ⁋ 38). She alleges that she was reprimanded, harassed, retaliated against, and constructively discharged because of her protected speech, and that she was treated differently than similarly situated individuals outside her protected class. (*Id.* ⁋⁋ 39, 40).

Powell alleges that the City had a policy or custom that permitted Dantzer to violate her First Amendment rights. She specifically alleges that the City's policy or custom: (1) fostered a hostile work environment discouraging employees from reporting illegal behavior; (2) participated in or enabled Dantzer's unconstitutional behavior by remaining indifferent or willfully ignorant; and (3) made working conditions so intolerable so as to compel employees who reported the behavior to resign. (*Id.* ⁋ 42). Powell alleges that the City violated her equal protection rights because its policies allowed Dantzer to: "(1) exhibit[] clear favoritism towards male employees, including at the financial expense of [Powell]; (2) ma[ke] derogatory remarks about female City employees, including directly to [Powell] in the presence of an elected City official; and (3) sexually harass[] and assault[] [Gable]." (*Id.* ⁋ 43).

Powell alleges that the City deliberately enabled and remained indifferent to Dantzer's and other City employees' discriminatory behavior by: (1) conducting a "sham investigation" into the October 29 incident, an investigation focused on Powell's work performance rather than the incident; (2) improperly withholding the certification and training costs from her final paycheck; and (3) failing to take corrective actions after she complained. (*Id.* ⁋ 44). Powell alleges that on March 10, 2026, City Attorney Leonard Schneider admitted that the third-party investigation into the October 29 incident was conducted to protect the City. (*Id.* ⁋ 45). Although a special City Council meeting included an agenda item related to a possible resolution to censure Dantzer, the Mayor Pro Tem and a City Councilmember instructed Gable to remove that item. (*Id.* ⁋ 46).

Powell brings six claims based on these allegations: a First Amendment retaliation claim against Dantzer in his individual capacity; a Fourteenth Amendment sex discrimination claim against Dantzer in his individual capacity; a *Monell* liability claim against the City; a retaliation claim against the City under the Texas Whistleblower Act; an FLSA claim against the City for

withholding parts of her compensation; and quantum meruit and unjust enrichment claims against the City. (*Id.* ¶¶ 47–102). Dantzer moved to dismiss, and Powell responded. (Docket Entry No. 34, 41). The City also moved to dismiss, and Powell responded. (Docket Entry Nos. 37, 45). The court held oral arguments on the motions. Each is addressed below.

## II. The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the

parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co*., 920 F.3d 890, 900 (5th Cir. 2019).

## III. Analysis

### A. Dantzer's Motion to Dismiss

Dantzer has moved to dismiss Powell's claims against him in his individual capacity for First Amendment retaliation and violations of the Fourteenth Amendment Equal Protection Clause. (Docket Entry No. 34 at 2). Because Powell has not plausibly alleged a constitutional violation for either claim, the court need not address Dantzer's qualified immunity defense. *See Estate of Henson v. Wichita Cty*, 795 F.3d 456, 462 (5th Cir. 2015).

#### 1. The First Amendment Claim

First, Dantzer argues that Powell has failed to state a claim under § 1983 for First Amendment retaliation. (Docket Entry No. 34 at 6). Powell must allege facts showing that: (1) she suffered from an adverse employment action; (2) she spoke as a citizen on a matter of public concern; (3) her interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) her speech precipitated the adverse employment action. *Johnson v. Miller*, 126 F.4th 1020, 1029 (5th Cir. 2025).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

However, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* at 417. *Garcetti* instructs that there are "two inquiries to guide interpretation of the constitutional protections accorded to public employee speech." *Id.* at 418. The court first asks "whether the employee spoke as a citizen on a matter of public concern." *Id.* If the answer is no, the employee has no First Amendment claim. *Id.* "If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.*

Powell argues that her November 4, 2025, complaint that Dantzer had assaulted Gable was not done as part of her job as the City's Human Resources Director, and that her "explicit invocation of whistleblower protection in the November 4 complaint conclusively indicates" that she was acting outside her job duties. (Docket Entry No. 41 at 10-12). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). The court looks to "factors such as job descriptions, whether the speech was directed at coworkers or supervisors, whether the speech was a result of special knowledge gained as an employee, and whether the speech was directed externally or internally up the chain of command." *Lucio v. Brownsville Indep. Sch. Dist.*, No. 25-40746, 2026 WL 3181015 (5th Cir. Oct. 23, 2026) (citing *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)).

Powell's allegations, however, show that submitting a formal complaint that an employee had been sexually harassed by a superior was part of her "normal tasks," *Hamilton v. City of Wilmer*, 140 F.4th 650, 651 (5th Cir. 2025) (citing *Lane*, 573 U.S. at 238 n.4), as the Human Resources Director. While Powell alleges that she acted as a whistleblower, her complaint

identifies multiple occasions in 2025 when she investigated and reported City employees for allegations of racial discrimination, harassment, favoritism, and insubordination, "pursuant to her [Human Resources] duties." (Docket Entry No. 29 ⁋ 13). Powell's complaint alleges that in August 2025, she advised a City employee who complained to her about Dantzer's "increasingly inappropriate text messages" on how to minimize contact with Dantzer. (*Id.* ⁋ 17). That employee declined to make a formal complaint, "likely in fear of retaliation." (*Id.*). Powell's complaint alleges that her job as Human Resources Director required her to handle employee complaints of sexual or other harassment by another City employee or official.

At a minimum, even assuming that investigating or reporting Gable's complaint was not required as part of Powell's job as the Human Resources Director, her investigation and report was "nonetheless related" to those job duties. *Harrison v. Lilly*, 854 F. App'x 554, 556 (5th Cir. 2021) (discussing *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 690–91, 694 (5th Cir. 2007); *Davis v. McKinney*, 518 F.3d at 315). Powell has alleged that on multiple occasions, in her role as the Human Resources Director, she investigated City employees on complaints of workplace misconduct and advised women who complained about inappropriate behavior. Powell's complaint shows that her speech about Gable's report was related to her duties as the Human Resources Director.

Powell's complaint allegations also show that she reported Dantzer's behavior to City officials and to Whittaker, her supervisor, rather than to external or public recipients. (*Id.* ⁋ 24). *See Davis v. McKinney*, 518 F.3d at 313 (distinguishing cases from circuits "holding that when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job," from cases finding that when "a public employee takes his job concerns to persons outside the work place in addition

to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen").

Powell has not plausibly alleged facts showing that her complaints about Dantzer's assault of Gable, Dantzer's other misconduct, and the harassment that Powell herself suffered, was speech outside the scope of Powell's job duties. This claim is dismissed with prejudice because Powell's speech was not protected under the First Amendment.

**2. The Fourteenth Amendment Claim**

Dantzer moves to dismiss Powell's Fourteenth Amendment claim because she has not pleaded facts showing constructive discharge. Dantzer also argues that the claim fails because Powell did not plead in sufficient factual detail that Dantzer was operating under color of law, that Powell was treated differently than a male comparator, or that Dantzer acted with discriminatory intent.

"To state a claim of sex discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Jackson v. Duff*, 161 F.4th 343, 347 (5th Cir. 2025) (citation modified). The Fifth Circuit considers whether the evidence is: "(1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision," to determine whether it is direct or circumstantial. *Liedtke v. City of Austin*, No. 25-50717, 2026 WL 2225275, *8 (5th Cir. Aug. 3, 2026) (citation modified).

Powell has not sufficiently alleged a temporal connection between what she alleges is direct evidence of sex discrimination and her termination. She alleges that Dantzer made a statement

that "women have too much estrogen"; Dantzer made an inappropriate comment about Powell's chest in front of another City official; and Dantzer exhibited systematic favoritism toward male employees. (Docket Entry No. 29 ¶¶ 11, 12, 13, 17). Powell alleges that Dantzer's assault of Gable is direct evidence of sex discrimination, but she has not pleaded facts showing that the assault on Gable was related to Powell's sex or that it was a factor in Powell's constructive discharge. Powell alleges facts that are circumstantial evidence of discrimination.

The *McDonnell Douglas* framework governs circumstantial evidence. At the motion-to-dismiss stage, Powell must plead facts showing that she: (1) was a member of a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) received less favorable treatment than similarly situated individuals outside her protected group. *Jones v. Hosemann*, 812 Fed. App'x 235, 238 (5th Cir. 2020); *McDonnell Douglas Corp v. Green*, 411 U.S.792, 802–03 (1973); *see also Jackson v. Duff*, 161 F.4th at 347 (applying the *McDonnell Douglas* framework at the motion-to-dismiss stage for a sex discrimination claim). Because Powell's § 1983 claim requires individual causation, she must also "plead and prove which actions of [Dantzer] caused the harm." *Jackson v. Duff*, 161 F.4th at 348 (citing *Jones v. Hosemann*, 812 Fed. App'x at 238) (citation modified).

One deficiency in Powell's complaint is that she has not sufficiently pleaded the existence of a similarly situated comparator. Powell argues that she was treated less favorably than the City Engineer in her work and salary, and Powell's male City employees more generally, because Dantzer did not harass them, retaliate against them for investigating his close friends or for submitting a complaint, or reduce their pay because of their sex or in retaliation for submitting a complaint. (Docket Entry No. 41 at 24). "A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and

qualifications." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018). Powell does not plausibly plead facts in her complaint showing that the City Engineer, or the other "male City employees," were in her department, held positions similar to hers, or had similar job descriptions or responsibilities. Powell therefore has not pleaded the existence of a similarly situated comparator outside her protected group, an essential element of her claim. *See Jackson v. Duff*, 161 F.4th at 347.[1]

Nor has Powell plausibly alleged that she was constructively discharged. The factors relevant to a constructive discharge allegation are:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Newbury v. City of Windcrest,* 991 F.3d 672, 677 (5th Cir. 2021) (quoting *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007)). Powell must allege that the conditions of her employment were "so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 480 (5th Cir. 2008) (quoting *Penn. State Police v. Suders,* 542 U.S. 129, 141 (2004)). Powell argues she has pleaded allegations relevant to the third, sixth, and seventh factors. (Docket Entry No. 41 at 13-14, 18).

Powell points to seven complaint allegations as sufficiently pleading constructive discharge: (1) other employees informed Powell that Dantzer was targeting her because she had submitted a formal complaint about the October 29 incident, (Docket Entry No. 29 ¶ 25); (2) other

[1] Powell's counsel also argued at the hearing that filing an amended complaint to plead a similarly situated comparator was unnecessary because it was "addressed in [their] pleading sufficiently as is." (Docket Entry No. 47).

employees close to Dantzer manufactured complaints about Powell's work performance, (*Id.* ¶¶ 26-27); (3) other employees close to Dantzer excluded Powell from meetings and from City business within her job duties, which effectively reduced her job responsibilities, (*Id.* ¶ 26); (4) other employees escalated their harassing and retaliatory behavior towards Powell, (*Id.* ¶¶ 26-31); (5) Powell's resignation was prematurely accepted before her stated departure date, (*Id.* ¶¶ 30-32); (6) upon information and belief, Dantzer influenced and directed the focus of the City's investigation away from himself to pretextually investigate Powell instead, (*Id.* ¶¶ 35-36); and (7) the City improperly deducted $2,251.60 from Powell's final paycheck, (*Id.* ¶¶ 33, 37).

These facts do not plausibly plead constructive discharge under Fifth Circuit precedent. Powell alleges actions by other employees, not Dantzer, in conclusory statements that their behavior caused her to resign. She acknowledges in her complaint that the allegedly manufactured complaints and reduction in responsibilities occurred at the same time that she received a favorable yearly review from Whittaker and that the City Council approved her guaranteed annual salary raise for her of at least $19,500 per year. (Docket Entry No. 29 at ¶28). Powell alleges that her resignation was prematurely accepted, but she had already tendered her resignation, although she intended to remain in her position for an additional six weeks to help the City with the transition. (*Id.* ¶31). The City was under no obligation to accept that help.

Powell's claim also fails because she has not plausibly alleged actions *by Dantzer* that caused her constructive discharge. Powell generally alleges that Dantzer orchestrated a harassment campaign against her by instructing his subordinates and friends to retaliate against her. However, as the Fifth Circuit has noted in a sex-discrimination case in which the plaintiff alleged that other employees "conspired, colluded, and collaborated" to deny him a promotion, "the naked assertion

of conspiracy without actual enhancement is generally inadequate." *Jones v. Hosemann*, 812 Fed. App'x at 239 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Powell fails to state a claim under the Fourteenth Amendment because she has not identified a similarly situated comparator, she has not alleged that she was constructively discharged, and she has not sufficiently alleged facts showing that Dantzer was the cause of the alleged constructive discharge. This claim is dismissed with prejudice.

### B. The City's Motion to Dismiss

The City moved to dismiss Powell's claims for *Monell* liability under 42 U.S.C. §1983, retaliation in violation of the Texas Whistleblower Act, failure to pay overtime wages under the Fair Labor Standards Act, and unjust enrichment. Powell does not oppose the dismissal of her claim under the Texas Whistleblower Act and for unjust enrichment. (Docket Entry No. 45 at 15, 16). The claim under the Texas Whistleblower Act is dismissed without prejudice because the City's immunity under the Act has not been waived in federal court. *See Flores v. Roma Indep. Sch. Dist.*, 2017 WL 11104106, at *2 (S.D. Tex. June 1, 2017). The claim for unjust enrichment is dismissed with prejudice.

#### 1. The *Monell* Liability Claim

Powell's *Monell* claim is based on her First Amendment and Fourteenth Amendment claims against Dantzer. (Docket Entry No. 29 ¶ 63-71). "[W]ithout a predicate constitutional violation, there can be no *Monell* liability." *Loftin v. City of Prentiss*, 33 F.4th 774, 783 (5th Cir. 2022) (citing *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020)). Because Powell cannot show that her constitutional rights were violated, her *Monell* claim against the City must be dismissed with prejudice.

### 2. The Fair Labor Standards Act Claim

The City also moves to dismiss Powell's FLSA claim. Powell alleges that by deducting $2,251.60 from her final paycheck, the City violated the FLSA. (Docket Entry No. 29 ¶ 88). She also alleges that she was classified as exempt from overtime even though she regularly worked over 40 hours per workweek and that the City's failure to pay overtime was willful. (*Id.* ¶¶ 84, 91). The City moves to dismiss because Powell was exempt from the FLSA's overtime requirements and her pay was not subject to improper deductions. (Docket Entry No. 37 at 13). In response to the City's motion, Powell argues that even though she was paid on a salary basis, the City subjected her pay to an "improper" deduction in egregious circumstances. (Docket Entry No. 45 at 13).

Employees serving in a bona fide executive, administrative, or professional capacity are exempt from the FLSA overtime requirements. 29 U.S.C. § 213(a)(1); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264 (5th Cir. 2000). Salaried employees who regularly receive a predetermined amount each pay period must not be "subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). "An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). The statute outlines factors to consider to determine whether deductions were improper:

> An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.

*Id.*

Powell has not pleaded facts that plausibly allege an "actual practice" of making improper deductions, as required by the statute. *See Valdez v. Spirit Truck Lines, LLC*, 2025 WL 4350762, at *3 (S.D. Tex. Oct. 22, 2025) ("Although '[a]n employer who makes improper deductions from salary shall lose the exemption,' the regulations specify that 'an *actual practice* of making improper deductions' is required.") (emphasis in original). Powell argues that a single improper deduction can defeat exempt status because that single deduction demonstrated a practice or intent to treat her salary as subject to deduction. But this approach ignores the factors that courts must consider under the statute. Even assuming that Powell had no "infractions warranting discipline," she alleges only one deduction to a paycheck issued after her employment with the City had ended. She does not allege that other salaried employees of the City had improper reductions to their salary or pleaded facts showing a policy permitting deductions. Powell has not plausibly alleged that the City violated the FLSA.

**C. Leave to Amend**

Powell moved, in the alternative, for leave to amend, but without providing proposed amendments. (Docket Entry Nos. 41 at 30, 45 at 21). Powell was previously granted leave to amend, and the court finds that further amendment would be futile. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000). Powell's constitutional claims against Dantzer are not plausible because they do not meet the requirements to state a claim for First Amendment retaliation and sex discrimination under the Fourteenth Amendment. Powell's FLSA claim fails because it is based on a single deduction to her paycheck after her employment relationship with the City had ended. This claim is dismissed with prejudice.

## IV. Conclusion

The court grants Dantzer's motion to dismiss, (Docket Entry No. 34). Powell's First Amendment and Fourteenth Amendment claims are dismissed, with prejudice because amendment would be futile. The court grants the City's motion to dismiss, (Docket Entry No. 37). Powell's claim against the City for violations of the FLSA is dismissed, with prejudice because amendment would be futile. Powell's claim against the City for retaliation in violation of the Texas Whistleblower Act is dismissed, without prejudice to Powell pursuing the claim in state court. Powell's claims against the City for unjust enrichment and quantum meruit are dismissed, with prejudice because amendment would be futile.

SIGNED on November 6, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge